UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| OLGA DE LEON, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-05-579 |
| | § | |
| SHIH WEI NAVIGATION CO., LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MOTION DENYING PLAINTIFFS'**
**MOTION FOR NEW TRIAL AND/OR RECONSIDERATION**

This case involves five stowaways who were allegedly thrown overboard when they were discovered on a ship that was sailing from the Dominican Republic to Galveston, Texas. Three of the stowaways allegedly suffered severe personal injuries, and the other two stowaways died. Defendants Shih Wei Navigation Co., Ltd. ("Shih Wei") and Dong Lien Maritime S.A., Panama ("Dong Lien") each filed a Motion to Dismiss for Personal Jurisdiction, and the Court granted said Motions on July 10, 2007. Now before the Court is Plaintiffs' Motion for a New Trial and/or Reconsideration of the Order Granting Defendant Shih Wei's and Defendant Dong Lien's Motions to Dismiss for Lack of Personal Jurisdiction. Plaintiffs offer three reasons why the Court should reconsider its ruling. After considering these reasons, the Court finds that Plaintiffs' Motion must be respectfully **DENIED**.[1]

**I.      Port Calls**

Plaintiffs claim that the Court misapplied the Fifth Circuit's holding in *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990) when it determined that the port calls made by

---

[1] The Court does not deem this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

vessels that were owned or operated by Shih Wei or Dong Lien did not rise to the level of minimum contacts necessary for the exercise of general jurisdiction. Because neither Shih Wei nor Dong Lien controlled the destinations of their vessels, the Court found that they did not purposefully avail themselves of the benefits and protections of Texas law. Plaintiffs assert that the *Asarco* Court did not hold that the contacts of an owner or operator should be disregarded if they were made at the direction of a charterer. Rather, Plaintiffs contend that *in personam* jurisdiction could not be exercised because the *Asarco* defendant's contacts were "better characterized as sporadic than continuous and systematic." *Asarco*, 912 F.2d at 787.

The Court agrees that the sporadic nature of the defendant's calls to Louisiana was a factor is the *Asarco* Court's decision. However, the *Asarco* Court *also* noted that the defendant "lacked control over where the vessels would make port," and it ultimately concluded that the defendant could "not be held to have availed itself of the benefits and protections of doing business in Louisiana by virtue of its sporadic operational management of vessels *sent to Louisiana by others*." *Id.* (emphasis added). While the *Asarco* decision was multi-faceted, the defendant's lack of control over the destination was a key element. In the instant case, like in *Asarco*, the charterer, not the owners or operators, chose the ship's destination. The Court appreciates Plaintiffs' attempt to distinguish *Asarco*, but it cannot agree that the contacts in the instant case are indicative of purposeful availment on Shih Wei's or Dong Lien's part. Accordingly, it is inappropriate to assert jurisdiction over these defendants based on the port calls alone.[2]

## II.     Time Charter Agreement

Plaintiffs next raise an argument that was not contained in their Response to the Motions to

---

[2] The only contacts alleged are the port calls made by vessels that were either owned or operated by Shih Wei or Dong Lien and the shore-side contacts that are necessarily associated with port calls.

Dismiss.  Plaintiffs point out that under the Time Charter Party's Stowaway provision, the chartered vessel was "off hire" after the stowaways gained access to the vessel.  Thus, Plaintiffs claim that Shih Wei or Dong Lien did have control over the destination in this case.  The Court finds this argument very clever and is impressed with counsel's zealous advocacy.  However, Shih Wei and Dong Lien's counter-argument regarding the meaning of the term "off hire" is convincing.  Under the Charter, when a vessel is "off hire," "the payment of hire and overtime, if any, shall cease for the time thereby lost."  "Off hire" apparently applies to pay and overtime.  The definition in no way indicates that the owner and/or operator is relieved of its obligation to deliver the charterer's cargo to the destination the charterer chose.  Thus, the vessel's destination after it was "off hire" is not an indication that Defendants purposefully directed their activities toward Galveston.

### III.  Fair Play and Substantial Justice

The Court extensively discussed the fair play and substantial justice prong in the Order Granting Shih Wei's and Dong Lien's Motions to Dismiss for Lack of Personal Jurisdiction, and it determined that the weighty policy considerations in the instant case were best left to the Fifth Circuit's discretion.  Nevertheless, the Court will briefly discuss Plaintiffs' new contention regarding fair play and substantial justice.

Plaintiffs argue that the crew threw the stowaways overboard because they were attempting to avoid or evade U.S. laws and that, if the Court's Order dismissing the claims against the owners stands, they will have "tragically succeeded" in their evasion.  The Court is certainly sympathetic with Plaintiffs' plight, as should be evident from the fair play and substantial justice analysis in the Court's previous ruling, but, while it applauds Plaintiffs' whole-hearted advocacy, it cannot agree with this argument.  Plaintiffs' Motion for New Trial and/or Reconsideration

discusses the penalties that were imposed on Defendants once they arrived in the United States. According to Plaintiffs, the vessel was detained for nearly a month, the U.S. marshals secured the vessel while it was detained, and the captain and crew were not permitted to leave the vessel. Thus, Plaintiffs own Motion belies their assertion that the crew "succeeded" in their mission to evade U.S. law.   The law they were attempting to evade is the law associated with bringing stowaways into the United States, not U.S. tort law.

The Court agrees that this case is a tragedy, and, as it discussed in its previous ruling, it encourages Plaintiffs to appeal the Court's decision not to exercise jurisdiction.[3]  But, the Court must follow the guidelines that the Fifth Circuit and the United States Supreme Court have thus far set regarding the exercise of personal jurisdiction over foreign defendants, and it cannot allow its sympathies with the tragedies Plaintiffs have faced to usurp its duty to follow the Fifth Circuit's and Supreme Court's interpretations of the Constitution.[4]

**IV.    Conclusion**

For the reasons enunciated above, the Court **DENIES** Plaintiffs' Motion for New Trial and/or Reconsideration.

---

[3] The Court candidly points out that, if the Fifth Circuit reverses its Order Granting Shih Wei's and Dong Lien's Motions to Dismiss, it will be delighted to proceed.  The Court, however, is duty-bound to apply the law as it exists regardless of the poignancy of the facts that are placed before it.

[4] As the Court noted in its previous Order, this case presents significant policy considerations regarding the sanctity of human life that are best left to the Fifth Circuit.  The old legal adage that "great facts make bad law" is applicable to this case.  Making decisions based on the heart rather than on legal precedent only serves to scramble the legal omelet.  In our legal system, the circuit courts hold the frying pan, and the district courts take their eggs as they are served. Otherwise, there would be too many cooks in the kitchen.

**IT IS SO ORDERED.**

**DONE this the 3rd day of August, 2007, at Galveston, Texas.**

Samuel B. Kent
United States District Judge